**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JODI HOLMES, | ) | CASE NO. 5:19-cv-2556 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| ANDREW SAUL, | ) | |
| *Comm'r of Soc. Sec.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Jodi Holmes (Plaintiff), challenges the final decision of Defendant Andrew

Saul, Commissioner of Social Security (Commissioner), denying her application for Disability

Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, *et*

*seq.* (Act). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the

undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule

72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge

recommends that the Commissioner's final decision be REVERSED and REMANDED for

proceedings consistent with this opinion.

## I. Procedural History

On February 24, 2016, Plaintiff filed her application for DIB, alleging a disability onset

date of July 1, 2015. (R. 10, Transcript (Tr.) 244-245). The application was denied initially and

upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge

(ALJ). (Tr. 150-168). Plaintiff participated in the hearing on May 31, 2018, was represented by

counsel, and testified. (Tr. 64-100). A vocational expert (VE) also participated and testified. *Id*.
On August 24, 2018, the ALJ found Plaintiff not disabled. (Tr. 54). On September 6, 2019, the
Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision
became the Commissioner's final decision. (Tr. 1-4). On October 31, 2019, Plaintiff filed a
complaint challenging the Commissioner's final decision. (R. 1). The parties have completed
briefing in this case. (R. 11, 13 & 14).

Plaintiff asserts the following assignments of error: (1) the ALJ erred when evaluating the
evidence and failed to include all the severe impairments; (2) the ALJ erred when evaluating
Plaintiff's credibility; and (3) the ALJ did not meet his burden at Step Five of the sequential
evaluation. (R. 11).

## II. Evidence

### A. Relevant Medical Evidence[1]

#### 1. Treatment Records

Prior to her alleged onset date, on July 29, 2014, Plaintiff was seen by Scot D. Miller, D.O.,
and assessed with lumbar disc herniation at right L2-L3 with neural compression and
degenerative lumbar disc disease at L2-L4. (Tr. 371).

On August 21, 2014, an MRI demonstrated worsening of L2-3 degenerative disc disease
without neural impingement, L3-4 stable degenerative changes without neural impingement, and
L4-5 lateral recess stenosis with impingement upon the descending left L5 nerve root, which was
stable and unchanged from the prior MRI of April 2013. (Tr. 374-375).

---

[1]  The recitation of the evidence is not intended to be exhaustive. It includes only those portions
of the record cited by the parties in their briefs and also deemed relevant by the court to the
assignments of error raised.

On September 17, 2014, Plaintiff underwent surgery, specifically a microdecompression with right L2-L3 microdiscectomy for a herniated disc. (Tr. 397, 399).

On October 9, 2014, Plaintiff complained of "some pain to the lower right back and her right leg as well as numbness [and] tingling to the same leg." (Tr. 399). She had been prescribed Vicodin over the last two to four weeks and she described her pain as improved. *Id*. Plaintiff was measured as 5'6" tall and weighing 200 pounds. (Tr. 400). Plaintiff ambulated without difficulty, and spine exam yielded normal results. (Tr. 401).

On May 7, 2015, Plaintiff was seen by Kathleen Fearon, D.O., complaining of continuing chronic pain despite her back surgery. (Tr. 346). At that time, Plaintiff was prescribed Imitrex for headaches, Demerol for migraines, and Hydrocodone-Acetaminophen for pain. (Tr. 347).

On June 30, 2015, a day before the alleged onset date, Plaintiff complained to Dr. Miller of lower back pain with numbness and tingling. (Tr. 404). Plaintiff rated her pain as a seven on a ten-point scale and described her pain as continuous. *Id*. Dr. Miller assessed spondylolisthesis degenerative lumbar/sacrum, stenosis lumbar/sacrum, and herniated nucleus pulposus (HNP) lumbar/sacrum. (Tr. 407).

On August 21, 2015, Dr. Miller performed a second back surgery on Plaintiff. (Tr. 425-427). Dr. Miller estimated that Plaintiff could return to work or school in three months. (Tr. 362).

At a post-surgical follow-up on November 10, 2015, Plaintiff complained of "pain in her left lower back that radiates into her left leg with numbness and tingling in her right leg." (Tr. 442). She reported improvement with medication. *Id*.

On December 23, 2015, Plaintiff presented to the ER with chest pain. (Tr. 557). A chest x-ray revealed normal heart and arteries, but degenerative osteoarthritis of both shoulders. (Tr. 555).

3

On January 18, 2016, Plaintiff reported that injections two weeks earlier helped her pain. (Tr. 526).

On February 24, 2016, Plaintiff again presented to the ER complaining of chest pain. (Tr. 471). A stress test a week earlier found a gated ejection fraction of thirty-two percent (Tr. 572). Plaintiff was admitted by Michael Ady, M.D. (Tr. 472). The next day, Plaintiff underwent a left heart catheterization, left ventriculography, and selective coronary angiography. (Tr. 497-498). The catheterization revealed an ejection fraction between fifty-five and sixty percent.[2] *Id*.

On February 2, 2016, Plaintiff underwent an MRI of the lumbar spine, which revealed no evidence of lumbar extruded disc fragment, spinal stenosis, or nerve root displacement. (Tr. 452).

On February 4, 2016, certified nurse practitioner Kathleen Opsitnick noted Plaintiff's post lumbar spinal fusion status and indicated Plaintiff was "unable to work at this time." (Tr. 361). She anticipated Plaintiff would be unable to return to work until August 21, 2016, one year after her surgery. *Id*. Nurse Opsitnick noted that Plaintiff's fusion was stable and healing well, that her MRI was benign, and that further surgery was not recommended. (Tr. 451). It was observed that Plaintiff was considered to have maximum medical improvement (MMI) from a surgical standpoint. *Id*.

On April 5, 2016, nurse practitioner Lisa Prebish noted Plaintiff had an antalgic gait, limited lumbar range of motion due to pain, and paraspinal muscle tenderness. (Tr. 519).

On May 23, 2016, Dr. Fearon referred Plaintiff for pain management, and started Plaintiff on Lyrica and Norco. (Tr. 654).

---

[2] A later treatment note characterized this ejection fraction as "essentially normal." (Tr. 604).

On October 3, 2016, Plaintiff complained to Dr. Fearon of depression, fatigue, and back pain. (Tr. 723-726). On physical examination, Plaintiff was not in acute distress, had a normal chest and lung exam, and a normal gait. (Tr. 725).

On January 3, 2017, Plaintiff saw Charles Milligan, D.O., although no physical exam was recorded. (Tr. 759-760). Dr. Milligan assessed fatigue and chronic low back pain. (Tr. 760).

On April 17, 2017, Plaintiff saw Dr. Milligan for complaints of lower back pain, numbness, and tingling, but no physical exam was recorded. (Tr. 770-771). Dr. Milligan assessed unintentional weight gain, thoracic back pain, and chronic low back pain. *Id*.

On April 27, 2017, Plaintiff underwent an MRI of the lumbar spine, which yielded an impression of post-surgical changes of the lumbar spine surgery at the L2-L4 level, no epidural thickening and enhancement that would suggest fibrosis, no evidence of arachnoiditis, mild degenerative changes at L4-L5, and epidural lipomatosis. (Tr. 772).

On July 12, 2017, Plaintiff was seen by Dr. Milligan, and reported that her back pain was unbearable. (Tr. 781).

On August 30, 2017, a CT scan of Plaintiff's lumbar spine yielded an impression of post-surgical changes without interval complication. (Tr. 811). That same date, Plaintiff was seen by Ajit A. Krishnaney, M.D., for evaluation and treatment of her back and leg pain. (Tr. 796). Plaintiff's ambulatory status was described as "Impaired Community Distances." (Tr. 797). Plaintiff indicated that she could perform light work around the house such as dusting and washing dishes, and was able to care for herself. *Id*. On physical examination, Dr. Krishnaney observed that Plaintiff's musculoskeletal inspection was within normal limits, that she had no pain on palpation, that her muscle tone and bulk were normal, that she had a normal sensory exam, and that Plaintiff had an antalgic gate. (Tr. 799). Dr. Krishnaney assessed failed back

syndrome with left hip flexor weakness and chronic pain. (Tr. 800).

On September 12, 2017, Plaintiff's chief complaints were ankle swelling, back pain, and weight gain. (Tr. 777). She reported falling down some stairs two weeks earlier possibly spraining her ankle. (Tr. 778). She could walk "decently well," and had minimal swelling. *Id*. She related that Lyrica and Vicodin made her back pain "not unbearable," but she was worried about weight gain. *Id*. She was planning another surgery to assess neuropathy. *Id*.

### 2. Medical Opinions Concerning Plaintiff's Functional Limitations

On August 10, 2016, Plaintiff was seen by consultative psychologist Robert Dallara, Ph.D. for a psychological evaluation. (Tr. 638-642). Dr. Dallara diagnosed major depression. (Tr. 641). Dr. Dallara opined that Holmes "may have some difficulties relating to others including fellow workers and supervisors" and "may have some difficulties withstanding stress and pressure associated with day-to-day work activity." (Tr. 642).

On August 29, 2016, Plaintiff was seen by consultative examiner Despina Isihos, D.O. (Tr. 708-717). On physical examination, Dr. Isihos noted Plaintiff was alert and cooperative but was tearful throughout the examination. (Tr. 711). Plaintiff was slow to ambulate, but did not appear unsteady on her feet and did not use an assistive device. *Id*. She was able to get onto the exam table without difficulty. *Id*. Plaintiff had good range of motion and good fine motor skills in her upper extremities. *Id*. She further had good sensation in both the upper and lower extremities, but demonstrated tenderness to palpation in the mid and lower back. *Id*. She had full muscle strength throughout her body and normal range of motion throughout her body. (Tr. 714-717). The doctor observed that muscle spasms or muscle atrophy were not present. (Tr. 715). Dr. Isihos assessed uncontrolled back pain and uncontrolled depression. (Tr. 712). According to Dr. Isihos, Plaintiff "is limited by the pain in her back and is unable to find any form of relief from

6

her back pain." *Id*. Dr. Isihos further opined that Plaintiff "is unable to successfully complete any ADLs (activities of daily living) without assistance at this time," "is unable to lift more than 5 pounds," and "is also currently limited by her overall emotional state of feeling depressed and mildly anxious from her current circumstance." *Id*.

On August 30, 2016, State Agency reviewing psychologist Paul Tangeman, Ph. D., reviewed Plaintiff's medical records and completed a mental RFC assessment. (Tr. 119-120). Dr. Tangeman found moderate limitations in Plaintiff's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and in her ability to complete a normal workday and work-week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id*. Dr. Tangeman explained that these limitations necessitated "a static work environment w/ less strict production quotas, pace, and standards." (Tr. 120). Dr. Tangeman also assessed moderate limitations in Plaintiff's ability to interact appropriately with the general public, and to accept instructions and respond appropriately to criticism from supervisors. *Id*. With respect to these latter limitations, Dr. Tangeman opined that Plaintiff "would do better with superficial interactions." *Id*.

On September 8, 2016, State Agency reviewing physician Gail Mutchler, M.D., reviewed Plaintiff's medical records and completed an RFC assessment. (Tr. 116-119). She opined that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds; stand/walk four hours and sit six hours in an eight-hour workday; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders/ropes/scaffolds; and had to avoid all exposure to hazards. (Tr. 117-118). The doctor assessed no manipulative, visual, or communicative restrictions. (Tr. 118). Dr. Mutchler noted that the August 29, 2016 medical evaluation services

opinion—the opinion of Dr. Isihos—was "overly restrictive in comparison with [the] remaining MER [medical evidence of record]." (Tr. 116).

On October 20, 2016, State Agency reviewing physician David Knierim, M.D., reviewed Plaintiff's medical records and offered an RFC opinion echoing Dr. Mutchler's assessment, including the finding that Dr. Isihos's opinion was "overly restrictive." (Tr. 137-140).

On December 11, 2016, Plaintiff attended a psychological consultative examination performed by Dr. Dallara who noted that Plaintiff "did not report a pattern of inability to adjust to workplace demands nor did she describe a history of mental or emotional deterioration in response to work exposure." (Tr. 752-756). Despite his observations, Dr. Dallara opined Plaintiff "may have some difficulties withstanding stress and pressure associated with day-to-day work." (Tr. 756).

On December 14, 2016, State Agency reviewing psychologist Juliette Savitscus, Ph.D., reviewed Plaintiff's medical records and completed a mental RFC assessment. (Tr. 140-142). Dr. Savitscus's opinion echoed that of Dr. Tangeman by indicating Plaintiff "would need a relatively static work environment w/ less strict production quotas, pace, and standards." (Tr. 141). Dr. Savitscus also assessed moderate limitations in Plaintiff's ability to interact appropriately with the general public, and to accept instructions and respond appropriately to criticism from supervisors. *Id*. With respect to these latter limitations, Dr. Savitscus opined that Plaintiff "is able to sustain brief and superficial interactions." *Id*.

**B. Relevant Hearing Testimony**

At the May 31, 2018 hearing, Plaintiff testified as follows:

- She is 5'6" tall and weighs 240 pounds. (Tr. 71). She lives with her husband and two children aged 20 and 14. (Tr. 71).

- She has a driver's license, but has difficulty driving due to numbness in her right leg. She stated she never drives, but drove three weeks earlier to a doctor's appointment ten minutes away. (Tr. 72).

- She is a high school graduate. (Tr. 73).

- Her past work included serving as a human resources director for ten years. (Tr. 73).

- Her last surgery on her back occurred in 2015, after which she continued to experience extreme pain in her lower back. Her pain is worse since the second surgery. (Tr. 76-77). The pain is located in her lower back and radiates throughout her body. She sees Dr. Milligan for back pain once every other month. (Tr. 77). Dr. Milligan is her family doctor, and she has seen Dr. Christiani once. (Tr. 78). She had been referred to, but yet to see Dr. Nagle. (Tr. 79).

- She received shots in her back, which made her limbs feel heavy and lethargic. (Tr. 79-80). She was unhappy with pain management, because she believes all they want to do is provide injections or prescribe narcotics to mask the pain. (Tr. 80).

- She used to perform physical therapy exercises until they became too painful to endure. (Tr. 82).

- She was reluctant to take narcotic pain medication, but eventually agreed to take it when prescribed by her family doctor rather than by pain management. (Tr. 83).

- During a typical night, she sleeps poorly and constantly changes positions moving from the recliner, to the couch, to the loveseat. (Tr. 84). She no longer cooks, cleans, or performs outdoor chores. (Tr. 85). Her husband does all the cooking and she rarely leaves the house. (Tr. 86, 89-90). She also changes positions all day long. (Tr. 87).

- She needs help showering, and dressing herself is difficult. (Tr. 89).

During the hearing, the VE identified Plaintiff's past relevant work as a manager, human resources, according to the Dictionary of Occupational Titles (DOT) 166.117-018. (Tr. 95). That position is skilled with an SVP of 8, sedentary as generally performed, and medium as Plaintiff actually performed it. *Id*.

The ALJ posed the following hypothetical question to the VE:

> The first hypothetical, assume a hypothetical individual of the Claimant's age and education, and with the past job you described. Further assume this individual is limited to light work with the following additional limitations;

> instead of standing or walking for six hours, this individual would only be able to
> stand or walk for up to four hours; occasional ramps and stairs; no ladders, ropes,
> or scaffolds. The other posturals would be occasional balance, stoop, kneel,
> crouch, and crawl; no unprotected heights, moving mechanical parts, or operating
> a motor vehicle; limited to simple, routine tasks, but not at a production rate pace;
> simple work related decisions; occasional contact with others; tolerating few
> changes in a routine work setting.

(Tr. 95). The VE testified that such an individual could not perform Plaintiff's past relevant work. (Tr. 96). However, the VE identified the following jobs that such an individual could perform: marker, DOT 209.587-034 (2,000,000 jobs nationally); checker I, DOT 222.687-010 (72,000 jobs nationally); garment sorter, DOT 222.687-014 (256,000 jobs nationally). (Tr. 96). All three positions were at the light exertional level. *Id*. The ALJ inquired how a person limited to performing four hours of standing/walking could perform the identified positions, to which the VE responded that all positions identified had a sit/stand option. *Id*.

The ALJ posed a second hypothetical with the same limitations as the first except reducing the exertional level to sedentary. (Tr. 96). The VE identified the following jobs that such an individual could perform: sorter, DOT 521.687-086 (537,000 jobs nationally); ink printer, DOT 652.685-038 (171,000 jobs nationally); and, table worker, DOT 739.687-182 (471,000 jobs nationally). All three positions were sedentary and accommodated a sit/stand option. (Tr. 97-98).

The ALJ also inquired as to the amount of absenteeism or off-task behavior an employer tolerates. (Tr. 97). The VE responded that "employers will tolerate an off task rate of 10% in an 8 hour workday, excluding any normal breaks. For absenteeism, employers will tolerate one day per month after any normal probationary period." *Id*.

In response to a question from Plaintiff's counsel, the VE testified that changing the second hypothetical to include a maximum of five pounds lifting limitation would "dramatically erode the job numbers." *Id*. The VE testified such a limitation would eliminate sixty-percent of the jobs

10

previously identified in response to the second hypothetical. (Tr. 98).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from performing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's

impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2. The claimant has not engaged in substantial gainful activity since July 1, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, status post lumbar fusion, osteoarthritis, peripheral venous insufficiency, obesity, depressive disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with the following additional limitations. The claimant can occasionally climb ramps and stairs, but cannot climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant cannot work at unprotected heights, near moving mechanical parts, or operate a motor vehicle. The claimant can perform simple, routine tasks but not at a production rate pace. The claimant can make simple, work-related decisions. The claimant can occasionally interact with supervisors, coworkers, and the public. The claimant can tolerate a few changes in a routine work setting.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on *** 1971 and was 43 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2015, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 47-54).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).

13

Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B.  Plaintiff's Assignments of Error**

**1. First Assignment of Error**

Plaintiff's first assignment of error is framed as a challenge to the ALJ's Step Two Finding. Although it suggests the ALJ failed to properly evaluate all the evidence and failed to designate back syndrome, chronic pain, cardiac problems, and migraines as severe impairments, it consists mostly of several smaller undeveloped arguments. (R. 11, PageID# 931). However, the first assignment of error more broadly argues the ALJ failed to adequately explain the weight assigned to several examining and non-examining medical sources. (R. 11, PageID# 933-937).

**a. Consultative Examiner Opinions**

Plaintiff argues that Dr. Isihos, a consultative examiner, limited her to no more than five pounds of lifting and that she would have difficulty completing activities of daily living without assistance. (R. 11, PageID# 936). Plaintiff contends the ALJ erred by "[i]gnoring these findings and recommendations," which resulted in harmful error. *Id*. With respect to Dr. Dallara, Plaintiff develops no meaningful argument other than to observe that he twice opined Plaintiff *may* have some difficulties relating to others and withstanding the stress and pressure of everyday work. (R. 11, PageID# 933 (emphasis added)).

Plaintiff's brief does not identify the standards regarding the weight accorded to non-treating sources, such as Dr. Isihos or Dr. Dallara. "Generally, [the Social Security Administration] give[s] more weight to the opinion of a source who has examined you than to

14

the opinion of a source who has not examined you. *See* 20 C.F.R. §§ 404.1527(c)(1). In addition,

Social Security Ruling (SSR) 96-8p, 1996 WL 374184 (July 2, 1996), cautions that an ALJ

"must always consider and address medical source opinions [and] [i]f the RFC assessment

conflicts with an opinion from a medical source, the adjudicator must explain why the opinion

was not adopted." *See also Puckett v. Colvin*, 2014 WL 1584166 at * 9 (N.D. Ohio, April 21,

2014) (Vecchiarelli, M.J.) The *Puckett* curt aptly noted that although the ALJ was not required to

evaluate opinions of consultative examiners with the same standard of deference as would apply

to an opinion of a treating source, the ALJ was required to "acknowledge that [the examiners']

opinions contradicted his RFC finding and explain why he did not include their limitations in his

determination of Plaintiff's RFC[.]" *Id.* The requirement that an ALJ *explain* the weight afforded

to a non-treating source's opinion should not be construed as rigorously as the treating physician

rule, however. *See, e.g., Jefferson v. Colvin*, No. 1:14cv01851, 2015 WL 4459928 at *6 (N.D.

Ohio 2015) (White, M.J.) (citations omitted); *Chandler v. Comm'r of Soc. Sec.*, No. 2:13cv324,

2014 WL 2988433 (S.D. Ohio, July 1, 2014) ("the ALJ is not required to give 'good reasons' for

rejecting a nontreating source's opinions in the same way as must be done for a treating source").

      The ALJ addressed Dr. Dallara's and Dr. Isihos's opinions as follows:

> I give some weight to the opinions of consultative examiner Dr. Robert F. Dallara
> Jr. Ph.D., who twice stated the claimant could understand and apply instructions
> in a work setting consistent with the average intellectual ability, may have
> difficulties relating to others, and may have difficulties withstanding stress and
> pressure (10F4-5, 16F4-5). I give only some weight to the opinion of Dr. Dallara
> because ultimately his employed language is vague, and provides little guidance
> concerning specific function-by-function limitations. While Dr. Dallara's opinion
> reasonably highlights the aspects of functioning significantly limited by the
> claimant's depressive symptoms, his opinion does not indicate how limited he
> believes the claimant to be, in those areas.
>
> I give little weight to the opinion of consultative examiner Dr. Despina Isihos
> D.O., who stated the claimant is unable to lift more than five pounds (12F5). Dr.

> Isihos' opinion is inconsistent with her own examination of the claimant, which revealed no strength loss in any joint, no muscular atrophy, and intact functioning in the upper extremities (12F4-7). It appears Dr. Isihos based her opinion on the claimant's subjective allegations, rather than the observed evidence.

(Tr. 52).

In her reply, Plaintiff, for the first time, takes issue with the ALJ's characterization of Dr. Dallara's opinion as vague. (R. 14, PageID# 971). The court disagrees. Dr. Dallara was rather equivocal in both opinions, suggesting merely that Plaintiff "may" have difficulties.[3] Plaintiff's reply also suggests the ALJ erred by relying on lack of "strength loss" or atrophy to discredit Dr. Isihos's opinion. (R. 14, PageID# 970). However, Plaintiff cites no authority supporting such an argument. The issue before the court is whether the ALJ sufficiently *explained* why Dr. Isihos and Dr. Dallara's non-treating opinions were not adopted in their entirety. In the case at bar, it is clear the ALJ did not ignore these opinions, but considered them and, furthermore, explained the reasoning why the opinions were not adopted wholesale. The explanation requirement applicable to non-treating sources, as explained above, should not be confused with or construed as rigorously as the standard applicable under treating physician rule. *See, e.g., Jefferson v. Colvin*, 2015 WL 4459928 at *6 (N.D. Ohio 2015) (White, M.J.); *Wright v. Colvin*, 2016 WL 5661595 at *10 (N.D. Ohio Sept. 30, 2016) (McHargh, M.J.) (declining to "judicially expand the treating physician rule to non-treating sources").

---

[3] Simply put, the court finds no reversible error stemming from an ALJ's omission of such an equivocal statement. To treat the possible limitations noted by Dr. Dallara as an affirmative finding that such limitations are mandated would improperly alter the contents of the medical source's opinion. *See, e.g., Slivka v. Berryhill*, No. 1:17-cv-01076, 2018 U.S. Dist. LEXIS 112681, at *22 (N.D. Ohio May 29, 2018); *Honaker v. Colvin*, No. 1:14-CV-2487, 2015 U.S. Dist. LEXIS 125835, 2015 WL 5559888 at *8 (N.D. Ohio Sept. 21, 2015) (White, M.J.) (finding no error where the ALJ did not adopt an equivocal and "non-committal" medical opinion that certain symptoms "could result in attendance or decision-making issues.")

Because the decision sufficiently explains the weight assigned to the opinion of these non-treating sources, Plaintiff has not identified any reversible error. To the extent Plaintiff "may disagree with the ALJ's explanation or her interpretation of the evidence of record, her disagreement with the ALJ's rationale does not provide a basis for remand." *Steed v. Colvin*, No. 4:15cv01269, 2016 WL 4479485, at *10 (N.D. Ohio Aug. 25, 2016) (McHargh, M.J.).

### b. State Agency Opinions

Plaintiff argues that the ALJ erred in reaching the RFC finding by omitting restrictions—limitations that the ALJ ostensibly credited—from the State Agency psychologists. (R. 11, PageID# 936). Indeed, the ALJ accorded "significant weight" to the State Agency psychologists' opinions, Drs. Tangeman and Savitscus, finding them to be consistent with the overall medical evidence of record. (Tr. 52). The ALJ expressly cites their opinion that Plaintiff "can tolerate only superficial interactions." *Id.* The final RFC finding, while including a number of mental-based limitations (*see* Tr. 50), does *not* include a limitation requiring only superficial contact.

The Commissioner's brief acknowledges that "[t]he ALJ gave 'significant weight' to the opinions of reviewing psychologists Drs. Tangeman and Savitscus." (R. 13, PageID# 962). In addition, the Commissioner argues that the ALJ alone is responsible for determining a Plaintiff's RFC. (R. 13, PageID# 963, citing 20 C.F.R. § 404.1546(c); *Rudd v. Comm'r of Soc. Sec.*, 531 Fed. App'x 719, 728 (6th Cir. 2013) ("[T]o require the ALJ to base her RFC finding on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.") (internal quotation marks and citation omitted)).

The Commissioner's argument, however, misses the mark. Although the ALJ is not

required to accept the State Agency opinions in their entirety or even in part, that is not the issue before the court. Rather, the issue is whether the ALJ must include a restriction, from a medical source, to which the ALJ has ostensibly ascribed significant weight; or stated differently, whether the ALJ can reject a restriction, which the ALJ appears to have ascribed significant weight, without explanation. As discussed below, the ALJ's decision in this regard was deficient.

Although an ALJ is not required to discuss every piece of evidence in the record to support a decision, an ALJ must explain why she or he did not include the limitations from a medical source's opinion when determining the claimant's RFC. *See, e.g., Moscorelli v. Colvin*, No. 1:15CV1509, 2016 WL 4486851, at *3 (N.D. Ohio Aug. 26, 2016) (*citing Thacker v. Commissioner*, 99 Fed. Appx. 661, 665 (6th Cir. 2004); *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011)). This is particularly important where two State Agency psychologists imposed the same "superficial interaction" limitation with the general public and supervisors, and the ALJ's decision accorded "significant weight" to those opinions without addressing why such a limitation was ultimately omitted from the RFC. SSR 96-8p provides that "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Moscorelli*, 2016 WL 4486851, at *3 (quoting SSR 96-8p, 1996 WL 374184, at *7); *see also Stubbs v. Berryhill*, No. 1:17CV2498, 2018 WL 5255140, at *14 (N.D. Ohio Oct. 22, 2018) (same).

While the ALJ incorporated the limitation that Plaintiff can have only *occasional* interaction with coworkers, supervisors, and the general public (Tr. 50), the court cannot conclude that "occasional interaction" and "superficial interaction" are coterminous. As such, the court cannot determine that this error was harmless. In addition, the ALJ did not include the

"superficial interaction" restriction, opined by Dr. Savitscus and Dr. Tangeman, when questioning the VE. (Tr. 95-98). Although the ALJ need only incorporate those limitations accepted as credible into the hypothetical questions, *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *9 (6th Cir. March 15, 2011) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993), 987 F.2d at 1235), the ALJ's decision does not explain why the "superficial interaction" restriction was omitted.[4] Consequently, the court cannot determine whether the ALJ's hypothetical adequately incorporated all of Plaintiff's limitations. Rather, without meaningful explanation from the ALJ, the court is left to speculate whether the limitation was found not credible or whether the RFC intended to accommodate that limitation.

Furthermore, given that the ALJ determined Plaintiff was unable to perform any past relevant work (Tr. 53), the burden shifted to the Commissioner at Step Five.[5]  Absent the ALJ's explanation for omitting the "superficial interaction" limitation, and without the benefit of VE testimony in response to a hypothetical that included a restriction limiting Plaintiff to "superficial

---

[4]  Testimony from a vocational expert—in response to a hypothetical question—may constitute substantial evidence that a claimant retains the ability to perform specific jobs, so long as the hypothetical question accurately accounts for a claimant's physical and mental impairments. *See, e.g., Pasco v. Comm'r of Soc. Sec.*, 137 Fed. App'x 828, 845 (6th Cir. 2005) (*citing Varley*, 820 F.2d at 779)).

[5]  At the fifth and final step of the disability analysis, if a claimant cannot perform his or her past relevant work, it must be determined whether the claimant can make an adjustment to other work in light of the claimant's RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The burden shifts to the Commissioner, at this final step, to prove the existence of a significant number of jobs in the national economy that a person with the claimant's limitations could perform. *Her v. Comm'r of Soc. Sec*., 203 F.3d 388, 391 (6th Cir. 1999); *accord White v. Comm'r of Soc. Sec.*, 312 Fed. App'x 779 (6th Cir. 2009). An ALJ's finding in this regard must be supported by substantial evidence (*i.e.* that the claimant has the vocational qualifications to perform specific jobs). *Workman v. Comm'r of Soc. Sec.*, 105 Fed. App'x 794, 799 (6th Cir. 2004) (*citing Varley v. Sec'y of Health & Varley*, 820 F.2d 777, 779 (6th Cir. 1987)).

interaction" with the public and supervisors, the court cannot discern whether inclusion of said restriction would have affected the outcome.

This court further agrees with the reasoning of a decision from the district court for the Southern District of Ohio:

> Despite assigning significant weight to the state-agency consultants' opinions (R. 47), the ALJ failed to adequately explain why he limited Plaintiff to "occasional contact with coworkers or supervisors" instead of contact "on a superficial basis [with] coworkers and supervisors" as recommended by Dr. Demuth. The terms "occasional" and "superficial" are not interchangeable. *See Lindsey v. Comm'r Soc. Sec.*, No. 2:18-CV-18, 2018 WL 6257432, at *4 (S.D. Ohio Nov. 30, 2018) ("'Occasional contact' goes to the quantity of time spent with [ ] individuals, whereas 'superficial contact' goes to the quality of the interactions.") (quoting *Hurley v. Berryhill*, No. 1:17-CV-421-TLS, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018)). Thus, the absence of any explanation requires remand. *See, e.g., Barker v. Astrue*, No. 5:09 CV 1171, 2010 WL 2710520, at *5-6 (N.D. Ohio July 7, 2010) (finding that the ALJ erred by failing to include in plaintiff's "RFC the prior ALJ's findings, as adopted by the state agency physicians, that Plaintiff have no interaction with the public and only superficial interaction with co-workers and supervisors" where the ALJ only "limited Plaintiff to no more than occasional interaction with the public (as opposed to no interaction with the public, as in ALJ Hafer's assessment), and he made no mention of whether and to what extent Plaintiff can interact with co-workers and supervisors"); *Hurley*, 2018 WL 4214523, at *4 (explaining that "occasional" and "superficial" are not interchangeable terms and finding that the ALJ erred in making no attempt to explain the basis of his decision to limit plaintiff to occasional rather than superficial interactions) (citing *Gidley v. Colvin*, No. 2:12-CV-374, 2013 WL 6909170, at *12 (N.D. Ind. Dec. 30, 2013)); *Cote v. Colvin*, No. 16-CV-57-SLC, 2017 WL 448617, at *7 (W.D. Wis. Feb. 2, 2017) ("The ALJ did not explain his reasons for only limiting the quantity and not the quality or duration of plaintiff's social interaction, even though several of the physicians whom he credited made clear that plaintiff's difficulties related to the quality of the interaction.").

> Certainly, an ALJ is not required to mirror or parrot medical opinions verbatim. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). But where, as here, the ALJ assigns significant weight to a particular opinion and states it is consistent with the record, he must incorporate the opined limitations or provide an explanation for declining to do so. *See, e.g., Queen v. Comm'r of Soc. Sec.*, No. 2:16-cv-1082, 2017 WL 6523296, at *9-10 (S.D. Ohio Dec. 21, 2017) (remanding where the ALJ "failed to include at least one limitation" from an opinion he had assigned great weight without explaining the omission). Thus, the ALJ's failure to provide such an explanation requires remand because it prevents this Court from

conducting meaningful review to determine whether substantial evidence supports his decision. See *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (noting that an ALJ's decision "must include a discussion of 'findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record.'" (quoting 5 U.S.C. § 557(c)(3)(A))); *Allen v. Astrue*, No. 5:11CV1095, 2012 WL 1142480, at *8 (N.D. Ohio Apr. 4, 2012) (remanding where "the ALJ failed to properly articulate the RFC calculation," explaining that the Court was "unable to trace the path of the ALJ's reasoning"); *Commodore v. Astrue*, No. 10-295, 2011 WL 4856162, at *4, 6 (E.D. Ky. Oct. 13, 2011) (remanding action "with instructions to provide a more thorough written analysis," where the ALJ failed to articulate the reasons for his RFC findings such that the Court could not "conduct a meaningful review of whether substantial evidence supports the ALJ's decision"); *Cote*, 2017 WL 448617, at *7 (requiring the ALJ to "build a logical bridge between the evidence and any social functioning limitations that he chooses to include in the residual functional capacity assessment").

In sum, the undersigned finds that reversal is warranted because the ALJ assigned significant weight to the state-agency psychologists' opinions, but failed to include a limitation for "superficial" interaction or offer an adequate explanation for how the RFC he assessed accommodated that limitation.

*Cooper v. Comm'r of Soc. Sec.*, No. 2:18-CV-67, 2018 WL 6287996, at *4–5 (S.D. Ohio Dec. 3, 2018) (footnotes omitted), *report and recommendation adopted*, 2019 WL 95496 (S.D. Ohio Jan. 3, 2019); *see also Mawyer v. Berryhill*, No. 2:16-cv-1140, 2019 U.S. Dist. LEXIS 43707, *21 (D.C. Nev., Feb. 28, 2019) (indicating "where the ALJ concludes that the claimant is functionally limited to 'only brief and superficial interaction with the public and coworkers,' he must adduce testimony from a vocational expert that there are other jobs that the claimant can perform with such a limitation."); *Parrish v. Berryhill*, No. 1:16-cv-1880, 2017 WL 2728394, *6 (N.D. Ohio, Jun. 8, 2017) ("[T]he VE testified that the limitations to superficial interaction relates to the 'quality of interaction,' and is more a measure of the intensity of the interaction, whereas terms like occasional or frequent relate to the quantity of interaction.")

The Commissioner defends the ALJ's omission and relies upon an unpublished Sixth Circuit opinion. (R. 13, PageID# 964) (citing *Reeves v. Comm'r of Soc. Sec.*, 618 Fed. App'x

267, 275 (6th Cir. 2015). The argument is unpersuasive and does not direct a different outcome in this case. The *Reeves* court concluded, without any explanation, that a plaintiff's ability to "relate to a few familiar others on a superficial basis," as described by a psychologist was accounted for by a limitation to only "occasional interaction" with the public. *Id.* The decision did not address the difference between the quantity of interaction (i.e. occasional) and the quality of the interaction (i.e. superficial). Furthermore, although the *Reeves* decision observed that there is no requirement for an ALJ to adopt a State Agency doctor's opinion verbatim even where it is ascribed great weight—an assertion that is generally unassailable—the ALJ herein purports to ascribe "significant weight" to the very portion of the opinion that is omitted, without any explanation, from the RFC.

Accordingly, the ALJ did not adequately explain why he rejected the superficial interaction restriction or, alternatively, if the restriction was silently accepted, the VE's testimony does not constitute substantial evidence to support the ALJ's decision at Step Five and a remand is required, as explained herein.

**2. Assignments of Error Two and Three**

As the court recommends remanding this matter, it foregoes addressing any of Plaintiff's remaining assignments of error in the interests of judicial economy.

The second assignment of error asserted that the ALJ failed to properly evaluate Plaintiff's credibility. (R. 11, PageID# 937-939). Without deciding the matter, the court notes that Plaintiff failed to identify which portions of her testimony the ALJ improperly found not credible, nor does Plaintiff explain how the ALJ's analysis failed to comply with applicable social security rulings, regulations, or case law. Rather, the argument consists of the rather conclusory statement that the ALJ allegedly disregarded limitations that would have supported her testimony. *Id.* It is

questionable whether Plaintiff has sufficiently developed her credibility argument.

With respect to the third assignment of error, Plaintiff asserts the ALJ erred at Step Five of the sequential evaluation because the finding was not supported by substantial evidence. (R. 11, PageID# 939-940). Specifically, Plaintiff contends that the ALJ's finding did not incorporate Dr. Isihos's opinion that Plaintiff was limited to lifting no more than five pounds. *Id*. Because the court recommends finding no error with respect to the ALJ declining to credit such an opinion, Plaintiff's third assignment of error would fail if such a recommendation is adopted as an ALJ is only required to pose a hypothetical question that incorporates those limitations the ALJ determined to be credible.

## VI. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be REVERSED and REMANDED for proceedings consistent with this opinion.

s/*David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date: October 26, 2020

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**